JORGENSON *v.* BARTLETT LUMBER CO.

MALICIOUS PROSECUTION — LIABILITY OF PRINCIPAL FOR ACTS OF AGENT—IMPLIED AUTHORITY.

Where the sworn complaint charging an employee of a lumber company with fraudulently obtaining transportation from the company under promise to repay and in failing to do so was signed by the company by one in charge of its office styling himself its secretary, he

will be presumed to have had authority to make said complaint, especially where its purpose was to compel reimbursement of the company for said advancement, and the company is therefore liable in an action against it for malicious prosecution.[1]

Error to Chippewa; Fead (Louis H.), J. Submitted April 24, 1925. (Docket No. 134.) Decided October 1, 1925.

Case by Arthur M. Jorgenson against the Bartlett Lumber Company and others for malicious prosecution. Judgment for plaintiff. Defendant lumber company brings error. Affirmed.

*Davidson & Hudson,* for appellant.

*M. M. Larmonth,* for appellee.

MOORE, J. The plaintiff recovered a judgment in the sum of $500 against the Bartlett Lumber Company. The case is brought into this court by writ of error. In August, 1917, the defendant company was in need of help and communicated that fact to Rudolph's Employment Agency in Detroit. It is the claim of the plaintiff that he was orally employed to go to the defendant company's place of business as a machinist, and that on the following day, which was Sunday, he with 16 others signed a contract which plaintiff says he did not read or hear read, which said nothing about the nature of his employment. He went to Shelldrake, and what occurred there will appear later. At the close of all the testimony the trial judge was requested to direct a verdict in favor of the Bartlett Lumber Company. This he declined to do, but reserved the question under Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1915, § 14568 *et seq.*), and submitted the case to a jury in a charge covering

---

[1] Malicious Prosecution, 38 C. J. § 107.

more than ten pages of the printed record.    The jury
returned a verdict as before stated.    Later the trial
judge filed an opinion in denial of the reserved motion
reading as follows:

"The action is malicious prosecution, originally
brought against A. B. Chalmers, David Barras and the
Bartlett Lumber Company.    Chalmers was not served
with process, the court directed a verdict in favor of
Barras, and the cause proceeded as against the defend-
ant, Bartlett Lumber Company.    The jury returned
a verdict in favor of the plaintiff for the sum of $500.
At the close of the testimony, defendant moved for a
directed verdict in its favor.    The motion was re-
served under the Empson act, and by agreement of
counsel is now presented on briefs.

"The defendant presents only one proposition, that
the evidence does not show that Chalmers was author-
ized by defendant lumber company to make criminal
complaint against the plaintiff.    Its position is thus
stated:

" 'Nothing in testimony can be construed into evidence that
Chalmers was authorized or directed by the Bartlett Lumber
Company to commence in its name a criminal case maliciously
or without probable cause.'

"Briefly stated the facts are:    In August, 1917,
written complaint was made by Chalmers, before David
Barras, a justice of the peace of Chippewa county,
against the plaintiff, charging him (in intent) with
fraudulently obtaining transportation from the Bart-
lett Lumber Company under a promise to repay and
in failing to repay, contrary to 2 Comp. Laws 1915,
§ 5581, a warrant was issued, plaintiff was arrested,
a hearing was had, and the justice sentenced plaintiff
to serve a term of sixty days in the Chippewa county
jail.    He served forty-five days.    The complaint
recites that it is made by the Bartlett Lumber Com-
pany and is signed 'Bartlett Lumber Company, by A.
B. Chalmers, Secy.'

"The testimony does not show that Chalmers was
secretary nor an officer of the defendant company.
The defendant conducts lumbering and timber manu-
facturing operations at Emerson in Chippewa county.
No officer of the corporation (if Chalmers was not an

officer) was continuously at Emerson but different officers made occasional trips to the operations to oversee them. The local affairs were under the immediate charge and supervision of different employees, Chalmers having charge of the office, Scott of the mill and Dacy of the woods operations. Among Chalmers' duties was that of employing men, particularly of employing them in considerable numbers through employment agencies.

"In line with such duties, Chalmers in August, 1917, sent a communication to an employment agency in Detroit, directing it to send a number of men to work for defendant at Emerson. Plaintiff was hired by such agency, and with several others, was brought to Emerson from Detroit by a representative of the agency, who paid their transportation and other expenses. Before leaving Detroit, the men signed a written promise to repay defendant, either in work or money, the expense of the transportation and the agency employment fee. Plaintiff claims he did not read the promise nor know the contents of the instrument. Upon arrival of the party at Emerson, the contract was turned in to Chalmers. The next morning, plaintiff reported for work at the defendant's machine shop and claimed to Scott, the superintendent of the mill, that he had been hired to work as a machinist at $4.50 or $5.00 per day. Scott informed him that there was no work for him as a machinist and put him at other labor at $2.50 per day. After working two days, plaintiff and another left in the nighttime, without notice. Chalmers thereupon made the complaint and caused their arrest.

"Before the justice, a somewhat informal hearing was had. Chalmers produced the contract to repay the transportation and both he and Scott were present and took part in the proceedings. Plaintiff again insisted that he had been hired as a machinist and complained of not getting such work. Demand was made upon him to repay the transportation advances made by the defendant, either in work or money, and he refused to do either. The justice and Scott testified that plaintiff pleaded to the charge but plaintiff denied having made such plea. The issue was submitted to the jury.

"The issues of Chalmers' authority to make the

criminal complaint on behalf of defendant, his malice
and want of probable cause, were also submitted to the
jury as questions of fact.

"It is not necessary, in order to render the defendant
liable for Chalmers' acts, that the latter should have
direct authority from the defendant to 'Commence in
its name a criminal case maliciously or without prob-
able cause.' If he had authority to make the com-
plaint in behalf of defendant, his own malice and want
of probable cause would be imputed to the corpora-
tion. *Wachsmuth* v. *National Bank,* 96 Mich. 430
(21 L. R. A. 278).

"It will be noticed that in addition to the acceptance
of transportation under a promise to repay, the statute
requires two other elements to make out the offense,
(1) that the acceptance must. be with intent to de-
fraud, and (2) that there shall be a neglect or re-
fusal to repay the advances, either in money or in
labor at the contracted price. The justice acted under
the second provision in offering plaintiff an oppor-
tunity to repay after arrest.

"Intent to defraud is peculiarly a jury question and,
in view of the plaintiff's claim to Scott, immediately
upon reporting for work, and later to the justice,
that he had been hired as a machinist, the questions
of malice and probable cause appear to me to be for
the jury. This is particularly so inasmuch as
Chalmers was not produced to show the specific in-
formation upon which he acted, there is no dispute of
plaintiff's claim that he was so hired as a machinist
and the instructions given to the employment agency
were not produced.

"The complaint shows directly that Chalmers was
not acting in his individual capacity but that he as-
sumed to act as an agent and in behalf of the defend-
ant corporation in causing plaintiff's arrest. It was
in line with his duties and authority that he caused
the hiring of plaintiff and that he had charge of the
agreement for reimbursement, which was the basis
of the complaint for the arrest. Under these cir-
cumstances and because of defendant's mode of con-
ducting its Emerson operations and in the absence
of testimony that Chalmers had no authority to make
the complaint in defendant's behalf, it is plain that
defendant was not entitled to a direction of verdict

upon the ground that Chalmers had no such authority.

"I am able to find no Michigan cases decisive of the issue as here presented. But in 18 R. C. L. p. 66 the rule is stated that:

"'The authority may be implied when the arrest is made by the agent in the absence of the principal for the protection of property that is in danger, and in some cases, it has been inferred when the arrest was to recover the property back, or when the crime was at the time being perpetrated.'

"The case at bar comes within this rule as the purpose of the complaint was to compel the reimbursement of the defendant for its advances made upon plaintiff's transportation."

Counsel argue four assignments of error, but they all revolve about the question of whether the defendant company authorized the complaint. The complaint itself purports to have been made by "Alex Chalmers (Secretary Bartlett Lumber Co.)" and recites "Whereof the said Bartlett Lbr. Co. prays that said Arthur Jorgenson may be apprehended," etc., and is signed "Bartlett Lumber Co., A. M. Chalmers, Secretary," and was a sworn complaint. The testimony is that the magistrate who issued the warrant was in the employ of the lumber company, as was the sheriff who served it. The testimony indicates that Mr. Chalmers was in charge of the office as head bookkeeper. We quote from the testimony of Mr. Scott:

"I live at Shelldrake, have been employed there eight years, first as mill foreman and since 1917 as superintendent. Mr. Chalmers was there in 1917 as head office man and bookkeeper. I do not know whether he was secretary of the company. It is not a fact that he had general charge. He had charge of certain parts of it, same as I did. I had charge of some certain parts of it. Mr. Chalmers had charge of the office part and he had complete charge of sending out men—authorizing men to be sent for. When he left I took that duty. When he went away I took his place. I remember when Jorgenson

came.    He was brought up by the Rudolph Employment Agency.    There was a letter or message of some kind sent to employ so many men and were to deliver them to the Bartlett Lumber Company, Shelldrake, Michigan.    There was sixteen or seventeen men came up in response to a letter or telegram."

No officer of the company resided at Shelldrake unless Mr. Chalmers was an officer.    At any rate he was as important a representative of the company as lived at Shelldrake.    We think the language used in *Wachsmuth* v. *National Bank*, 96 Mich. at pp. 430, 431 (21 L. R. A. 278), is germane here.    We do not quote what was said but refer to it.    We discover no reversible error.

The judgment is affirmed, with costs to the appellee.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.